**NO. 13-50016**

In the
**United States Court of Appeals
for the Fifth Circuit**

**CHRYSTIE T. NGUYEN,**
*Plaintiff – Appellant*

**v.**

**UNIVERSITY OF TEXAS SCHOOL OF LAW,**
*Defendant-Appellee*

**On Appeal from the United States District Court
For the Western District of Texas, Austin Division
No. 1:11-CV-323-SS**

**APPELLANT'S BRIEF**

Robert Notzon
State Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474 - 7563
(512) 852 - 4788 Facsimile
***Attorney for Appellant***

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

Chrystie T. Nguyen, **Appellant**;

> Robert Notzon
> State Bar No. 00797934
> The Law Office of Robert S. Notzon,
> 1502 West Avenue
> Austin, Texas 78701
> (512) 474 - 7563
> (512) 852 - 4788 Facsimile
> **Attorneys representing Appellant;**

University of Texas School of Law, **Appellee**;

> Dan Perkins, Asst. Attorney General
> OFFICE OF THE ATTORNEY GENERAL
> STATE OF TEXAS
> P.O. Box12548, Capitol Station
> Austin, Texas 78711-2548
> (512) 463-2120
> (512) 320-0667 Facsimile
> **Attorneys representing Appellee**

_____/s/ Robert Notzon_____
Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal arises from the Appellant's straight forward assertion of an improper grant of summary judgment in contravention of firmly established summary judgment evidentiary standards and a misstatement by the District Court of the plaintiff's burden to establish a question of fact on pretext, it would appear that Oral Argument would most likely be unnecessary. However, given that Appellant's case also presents both a fact-intensive causation issue and an atypical showing of improper influence of race, which may be fairly summed up as following the *Price Waterhouse v. Hopkins* discrimination-based expectations model, the Court may determine that Oral Argument would be helpful to a full understanding of her claims. Appellant is ready and willing to assist the Court through Oral Argument should the Court order it.

# TABLE OF CONTENTS

***CERTIFICATE OF INTERESTED PERSONS*** ............................................................ ii

***STATEMENT REGARDING ORAL ARGUMENT*** ................................................ iii

***TABLE OF CONTENTS*** ............................................................................................ iv

***TABLE OF AUTHORITIES*** ..................................................................................... vi

***STATEMENT OF JURISDICTION*** .......................................................................... 1

    A.   **Subject-Matter Jurisdiction in the District Court** ............................... 1

    B.   **Jurisdiction in the Court of Appeals** ..................................................... 1

    C.   **Filing Dates Establishing Timeliness of Appeal** .................................. 1

    D.   **Finality** ...................................................................................................... 1

***STATEMENT OF ISSUES PRESENTED FOR REVIEW*** ....................................... 2

***STATEMENT OF THE CASE*** ..................................................................................... 5

***STATEMENT OF FACTS*** ........................................................................................... 6

***SUMMARY OF THE ARGUMENT*** ......................................................................... 13

***ARGUMENT AND AUTHORITIES*** ........................................................................ 14

    **Standard of Review** ...................................................................................... 14
        Grant of Summary Judgment ....................................................................... 14

    **Issue 1: <u>Race as a Motivator</u>: Nguyen is visibly Asian. Esposito gave Nguyen written "Expectations" regarding behavior in "American/Texas business culture." Esposito knew that Nguyen had worked in "Texas" for the previous three years and never worked outside of "America." Three months later, Esposito gave written "Expectations" to a White employee without any mention of "American/Texas business culture." Esposito testified that Nguyen doesn't act like "most Asians." Did the Court err in finding that Nguyen produced no evidence of racial motivation?** ........................................................... 15

    **Issue 2: <u>Misapplication of Law</u>: A court commits reversible error if it misapplies the law when granting summary judgment. The 5th Circuit has not applied a pretext-plus standard since *Reeves*. The District Court cited *Sandstad* for the proposition that to meet its burden to show pretext, the plaintiff "must produce evidence which supports an inference of improper animus behind the decision to terminate." Did the District Court err in its application of the pretext burden in this case?** ................................................... 22

    **Issue 3: <u>Prima Facie Case-Similarly Situated</u>: The District Court found, but did not cite to, "uncontroverted evidence [Nguyen] failed to perform any of the thirteen special projects she was hired to carry out." No mention of failing to perform thirteen special projects in termination letter. Evidence shows Nguyen performed some of the special projects. Esposito transitioned Nguyen to predominantly Program Coordinator ("PC") duties after two PC's left UT. Did the Court err in finding that Nguyen was not similarly situated?** ........................................................................................................ 26

**Issue 4: <u>Prima Facie Case-Disparate Treatment</u>: Evidence shows UT subjected Nguyen to racially disparate treatment in more than eight different employment actions. Evidence shows UT knowingly and disparately made false allegations to terminate Nguyen. Did the Court err in finding that Nguyen produced no evidence of racially disparate treatment?** .......................................................................... 29

**Issue 5: <u>Pretext</u>: UT allegedly terminated Nguyen for not performing her job.  During the same period Nguyen allegedly could not perform her job, UT assigned Nguyen more work than any other PC.  UT's allegations against Nguyen are undocumented and subjective. Evidence shows UT's allegations against Nguyen were false, fabricated, and/or contradicted. Did the Court err in finding that Nguyen produced no evidence of pretext?** ....................................................................................................... 35

**Issue 6: <u>Same Actor Inference Does Not Apply</u>: Nguyen's supervisor admitted that he hired Nguyen at the request to the Dean.  The Dean paid Nguyen's salary making her a "free" employee.  Within weeks of Nguyen's hiring, Nguyen's supervisor made three separate unsolicited and non-business-related references to Nguyen's race.  Did the Court err in finding that Nguyen had produced no evidence to rebut the Same Actor inference?** ....................................................................................................... 40

**Issue 7: <u>Weighing the Evidence</u>: The District Court weighs evidence in its grant of summary judgment by referring to UT's evidence as "well-populated," "considerable," "a mountain," and "abundantly established." In it's opinion granting summary judgment, the District Court drew inferences in UT's favor multiple times, and consistently failed to draw all reasonable inferences in Nguyen's favor. Did the District Court err by weighing evidence and improperly drawing inferences?** ............................. 42

***CONCLUSION*** .................................................................................... 48

***CERTIFICATE OF SERVICE*** ............................................................. 49

***CERTIFICATE OF COMPLIANCE*** ...................................................... 49

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) .............................. 42

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-9 (1970) .......................................... 14

*Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.,* 400 F.3d 260, 262-63 (5th Cir. 2005) ................................................................................................................ 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................................................................................................ 14, 42

*Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007)............................................ 26, 30

*Bryan v. McKinsey & Co.*, 375 F.3d 358, 360(5th Cir. 2004) ........................................... 26, 30

*Coleman v. Exxon Chem. Corp.,* 162 F. Supp. 2d 593, 608 (S.D. Tex. 2001) .......................... 27

*Connecticut v. Teal*, 457 U.S. 440, 453-54, 102 S.Ct. 2525, 2533-34, 73 L.Ed.2d130 (1982).... 18

*Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 764-65 (5th Cir. 2002) ...................... 14

*Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) ........................................... 15

*Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 708,98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978*)* ................................................................................................ 18

*Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) ........................................ 29

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984) ................. 18

*Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992)......................................... 18

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).... passim

*Puente v. Potter,* Civil Action No. SA-05-CA-747-XR, 2007 U.S. Dist. LEXIS 23708, 2007 WL 869584, at *6 (W.D. Tex. March 20, 2007).............................................................. 26

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000) ................................................................................................................ passim

*Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226-27 (5th Cir. 2001)............................ 16

*Sandstad v. GB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002) ........................................ passim

*Williams v. Gonzales,* No. 1:04-CV-342, 2005 U.S. Dist. LEXIS 38838, at *35-36 (E.D. Tex. Dec. 14, 2005)........................................................................................................ 26

**STATUTES**

28 U.S.C. §1291 ................................................................................................................ 1

28 U.S.C. §1331 ................................................................................................................ 1

28 U.S.C. §1343 ................................................................................................................ 1

42 U.S.C. §2000-e ...................................................................................................... 1, 16, 18

**RULES**

FRAP (32)(a)(5)................................................................................................................ 49

FRAP (32)(a)(6)................................................................................................................ 49

FRAP (32)(a)(7)(B) .......................................................................................................... 49

# STATEMENT OF JURISDICTION

### A.    Subject-Matter Jurisdiction in the District Court

This is an appeal of a case alleging violations of Nguyen's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000-e, therefore the District Court had original jurisdiction of this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

### B.    Jurisdiction in the Court of Appeals

Nguyen appeals the order and judgment of the District Court below granting summary judgment on all claims (RE3)[1] and denying her motion for new trial (RE4), which was treated as a motion to modify. Jurisdiction exists pursuant to 28 U.S.C. §1291.

### C.    Filing Dates Establishing Timeliness of Appeal

The final order denying the motion to modify was entered on December 11, 2012. RE4. On January 9, 2013, Nguyen timely filed her notice of appeal. RE2.

### D.    Finality

This appeal is from the entry of a final judgment on all claims and parties.

---

[1] Record Excerpts shall be referenced in the following format: RETab#:pg#-pg#.  Therefore, a reference to the Order Granting Summary Judgment shall be "RE3".  A reference to page 9 and 10 of that same Order shall be "RE3:9-10".

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue 1:  Race as a Motivator:** Nguyen is visibly Asian. Esposito gave Nguyen written "Expectations" regarding behavior in "American/Texas business culture." Esposito knew that Nguyen had worked in "Texas" for the previous three years and never worked outside of "America."  Three months later, Esposito gave written "Expectations" to a White employee without any mention of "American/Texas business culture." Esposito testified that Nguyen doesn't act like "most Asians." Did the Court err in finding that Nguyen produced no evidence of racial motivation?

**Issue 2: Misapplication of Law**: A court commits reversible error if it misapplies the law when granting summary judgment.  The 5th Circuit has not applied a pretext-plus standard since *Reeves*. The District Court cited *Sandstad* for the proposition that to meet its burden to show pretext, the plaintiff "must produce evidence which supports an inference of improper animus behind the decision to terminate." Did the District Court err in its application of the pretext burden in this case?

**Issue 3:  Prima Facie Case-Similarly Situated:** The District Court found, but did not cite to, "uncontroverted evidence [Nguyen] failed to perform any of the thirteen special projects she was hired to carry out." No mention of failing to perform thirteen special projects in termination letter.  Evidence shows Nguyen

performed some of the special projects. Esposito transitioned Nguyen to predominantly Program Coordinator ("PC") duties after two PC's left UT. Did the Court err in finding that Nguyen was not similarly situated?

**Issue 4: Prima Facie Case-Disparate Treatment:** Evidence shows UT subjected Nguyen to racially disparate treatment in more than eight different employment actions. Evidence shows UT knowingly and disparately made false allegations to terminate Nguyen. Did the Court err in finding that Nguyen produced no evidence of racially disparate treatment?

**Issue 5: Pretext:** UT allegedly terminated Nguyen for not performing her job. During the same period Nguyen allegedly could not perform her job, UT assigned Nguyen more work than any other PC. UT's allegations against Nguyen are undocumented and subjective. Evidence shows UT's allegations against Nguyen were false, fabricated, and/or contradicted. Did the Court err in finding that Nguyen produced no evidence of pretext?

**Issue 6: Same Actor Inference Does not Apply:** Nguyen's supervisor admitted that he hired Nguyen at the request to the Dean. The Dean paid Nguyen's salary and was responsible for her hiring. Nguyen was a "free" employee to CLE. Within weeks of Nguyen's hiring, Nguyen's supervisor made three separate unsolicited and non-business-related references to Nguyen's race. Did the Court err in finding that Nguyen had produced no evidence to rebut the Same Actor

inference?

**Issue 7: Weighing the Evidence:** The District Court weighs evidence in its grant of summary judgment by referring to UT's evidence as "well-populated," "considerable," "a mountain," and "abundantly established." In it's opinion granting summary judgment, the District Court drew inferences in UT's favor multiple times, and consistently failed to draw all reasonable inferences in Nguyen's favor. Did the District Court err by weighing evidence and improperly drawing inferences?

## STATEMENT OF THE CASE

This case arises out of plaintiff Chrystie Nguyen's ("Nguyen") termination from her employment with University of Texas School of Law ("UT") for racially disparate and pretextual reasons. Nguyen relies upon her showing of racially disparate, consistent and broadly applied adverse employment actions against her coupled with a strong showing of pretext related to UT's proffered reasons for its termination of Nguyen, as well as the pretextual nature of UT's attempts to deny and avoid a finding of disparate treatment in this case.

This case has an added feature, which makes it somewhat unique. In addition to Nguyen's evidence of racially disparate treatment during her employment and leading up to her termination, Nguyen also points to separate evidence that race played an improper role in Nguyen's employment. Specifically, at the beginning of Nguyen's employment under Michael Esposito ("Esposito"), the person who terminated her, Esposito testified to his impression that Nguyen, who is Vietnamese, did not act like "most Asians" and that she needed to modify her behavior while working under his supervision. He communicated this desire through a written behavioral "Expectations" document he gave to Nguyen less than a year prior to her being placed on short-term renewal and then subsequently terminated.

To be clear, Nguyen does not claim that the "Expectations" document forms an

actionable adverse employment decision.  However, Nguyen asserts that such an expression of a required conformity to a behavioral standard based on perceived and specified racial norms should be considered at the very least as supporting evidence that race played an improper role in Nguyen's employment.

## STATEMENT OF FACTS

It is undisputed that Nguyen began working for UT in 2006 as the executive assistant to the Dean. During her time working in the Dean's Office, Nguyen was never disciplined or otherwise notified that her performance was unacceptable, although UT denied this fact in their Responses to Nguyen's Requests for Admissions. R707, R144. To the contrary, the Dean gave Nguyen two pay raises, including one just before her transfer to CLE. R736, R146. The Dean admitted that Nguyen's desire to telecommute and the need for the Dean to have his executive assistant present in the office fulltime was the only issue discussed with Nguyen as the bases for her transfer to CLE.[2] R147-48.

Nguyen met with Michael Esposito ("Esposito") and Hollis Levy ("Levy") to discuss the job and the possibility of the transfer. There was no discussion of race between Nguyen, Esposito, and Levy. RE6:1. However, prior to Nguyen's transfer, Esposito gave Nguyen an "Expectations" document, which made mention of

---

[2] The only relevant period of employment by Nguyen to this case is her time in the CLE department, therefore, for ease of reference all discussion of Nguyen's employment will identify her employer as "UT."

6

several behavioral expectations she should adhere to while employed by Esposito. RE5. Nguyen found the document odd given that it made reference to an "American/Texas business culture" even though she had never worked outside of the United States and had been working in Texas for over three years before being presented with these "Expectations." RE6:1. The "Expectations" was also unusual because Nguyen saw references to some stereotypically Asian behaviors. *Id.* The only other Asian employed by CLE at that time had never received such a document and admitted that if she had received such a document she would have been offended. R295.

Esposito's deposition testimony regarding his thoughts and reasoning behind his drafting of the "Expectations" include several versions, all of which confirm that the "Expectations" document is directly related to Nguyen's race and no other business-related reason, as exhibited by the following quotes:

- "…[Nguyen] made the statement that Asians do things this way or Asians do things that way, and I said to her, there's a lot of different Asian nationalities and I don't generalize about Asians." RE7:1.
- "…[Nguyen] …told… [Levy] …Asians don't like—they like to communicate through writing…. And with that input I said I better address and clarify what's expected in the office." *Id.*
- "Q. About Ms. Nguyen talking about being an Asian and … exhibiting looking down, looking away and disinterest, boredom, and contempt?
  A. Yes. She provided an example of that to me.
  Q. And you equated that with something other than American and Texan.
  A. [I]t was my impression … that [Nguyen] considered behavior that people might find offensive totally appropriate on the grounds …that she's Asian, and I agree that most Asians don't do that. I've never given [the

"Expectations" document] to any other person, but I've never had anyone come to the office with a background like this." RE7:3.

- "…at the end of the day she didn't want to talk to us because she didn't -- because Asians don't like to talk to people. And I've never had any other Asian before or since say that to me. Correct that. Say that to – say that to Hollis." RE7:4.

- "Q. -- Ms. Nguyen's job expectations and was not placed in anyone else's job expectations? Is that correct?
A. It was the first time it was used.
Q. And the only time, correct?
A. Yes.
Q. Created by you to give to Ms. Nguyen?
A. Correct." RE7:2.

Although Esposito obviously attempts to place the "blame" for writing the "Expectations" document on Nguyen having made overt references to her race during her meetings with both Esposito and Levy (RE7:1-4), incredibly there is no such mention of this alleged fact in Esposito's and Levy's detailed affidavits responding to Nguyen's charge of race discrimination (R334-52, R436-44); no mention of this alleged fact in Levy's deposition (R242-43); nor is there any such mention of this fact in any emails between Esposito, Levy, and/or the Dean at the time. R372.

Nguyen made no mention of the "Expectations" to Esposito or Levy at the time assuming the best intentions of all persons moving forward and not aware that she had been the only person to receive such a document. RE6:1. The only other racial cause for pause for Nguyen was when she received an email from Esposito that mentioned only one other employee within CLE, Tsina Villarmia/Napoliello

("Villarmia"), for the stated reasons that Nguyen and Villarmia had similar backgrounds. R813. However, other than being Asian, generally (Nguyen is Vietnamese and Villarmia is Filipino), none of the other descriptions provided by Esposito about Villarmia in the email were applicable to Nguyen in any reasonable way. R173. Nguyen did not take offense or say anything at that time.

Nguyen's employment changed substantially within the first six months under Esposito. During that time, Esposito lost two employees that were performing Program Coordinator ("PC") duties. R808-09, RE6:2-3. Rather than replace these employees, Esposito transitioned Nguyen to a predominantly PC role. RE6:2-3, R199. In fact, Esposito stopped making any reference to special projects with Nguyen and increased her PC assignments until she had the heaviest work load[3] of any PC over a period from March 2009 through January 2010 (RE6:2-3), which runs from five months before her short-term renewal through to the month of her termination notice. *Id.*, R735, R742-47, R756-57, R760-61.

Nguyen continued to perform special projects, even though Esposito made no mention of special projects to Nguyen for a period of eight months until he placed her on short-term renewal. R627 In their depositions, Esposito admitted (R189, R191) and Levy denied (R224) that Nguyen had created special projects that were

---

[3] The term heaviest workload means both in terms of number of programs as well as complexity based upon Esposito's deposition designations of which programs were the most complicated. R195-97, R199.

useful to CLE. Additionally, both Nguyen and her co-worker, Lynne Koepp ("Koepp"), who is still employed by CLE, testified that Nguyen had created multiple tools that were helpful to CLE during this time. RE6:2, R314-15, R628.

Esposito revoked Nguyen's ability to telecommute on August 17, 2009 (R482) in violation of UT policy (R791) and without any documented justification other than simple factually unsupported allegations of problems with Nguyen. R205. In their depositions, both Esposito and Levy admitted that the August 17th memo contains no indication that it is disciplinary in nature. R251, R207. Both Esposito and Levy admitted that the August 17th email was in fact not a disciplinary action. R206, R251. However, the request for termination specifically and falsely listed the August 17th memo as a prior disciplinary action. R411.

Without any prior disciplinary actions (R207); without any warning (*Id.*); without any documentation (*Id.*); without any specificity (*Id.*); and while Nguyen was successfully managing the heaviest PC workload compared to all other PC's (R199, RE6:2), Esposito asks the Dean to approve Nguyen's short-term renewal based upon four factually unsupported allegations. R399-400. In an 8/21/09 email (R398), Esposito falsely stated that Nguyen's short-term renewal was the Dean's suggestion, however, both Esposito and the Dean testified in their depositions that Esposito was the source of the action. R206, R151-52. The Dean also admitted that he approved Esposito's request without documentation of Nguyen's alleged poor

performance (R149-50), without conducting his own review (R150), and without discussing the evidence with Esposito. R152. In his deposition, the Dean even retracted his prior sworn statement (R602) that Esposito had not made his decision based upon race, due to his admission that he had no factual basis with which to make that assurance. R150

The allegations contained in the short-term renewal and termination notices are not supported by any documentary evidence or level of detail beyond the conclusory assertions of Esposito and Levy (R399-400, R413-14), despite the assertions of UT and the District Court without citing to any evidence in support of their assertions. Nguyen chronicles substantial evidence of racial disparity and pretext associated with each of these four allegations. R623-24, R626-29. Nguyen incorporates that substantial evidentiary assessment contained in her MSJ Response and her Appendix. RE8:1-18.

Following the short-term renewal notice, Esposito and Levy continued to disparately harass Nguyen by taking the following actions against her: **a)** fabricating allegations that Nguyen was violating a directive from Esposito when there is no way that she could have received his instructions prior to his angry accusations and threats (R717-19, R721-22, R621, R741); **b)** continuing to assign a greater share of PC tasks to Nguyen even though Nguyen is supposed to be performing these tasks badly and even though Nguyen was supposedly being given

a chance to keep her job (R735, R747); **c)** Nguyen was the only employee evaluated in the entire department that year (R262) and Nguyen's evaluation was back-dated approximately two months (R265-66) to make it appear that it had been written at the time of the short-term renewal. R577, R622, R645, RE6:3. Nguyen wrote a rebuttal to that evaluation attempting to chronicle all of its deficiencies (R578), which presumably prompted Esposito to engage in more prevarication in response to her complaints two months later when he requested termination; **d)** Esposito and Levy misrepresented that Nguyen had been sent "at least 20 notifications giving examples of performance deficiencies via email" between October and December 2009 (R584, R266, R208), when in fact there were not even 20 emails sent to Nguyen period during this period of time produced by UT (R717-34), much less 20 emails regarding legitimate performance deficiencies; and **e)** Finally, recommending termination based upon fabricated, false, factually unsupported, and contradictory allegations. R413-14.

Nguyen chronicled an extensive array of evidence establishing the disparity of treatment against Nguyen, the lack of any evidence in support of UT's allegations, and a substantial showing of pretext associated with each and every allegation which Nguyen incorporates as if fully set forth herein.

## SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment relies upon misstatements of the law, claims, and evidence in this case as well as the District Court's failure to adhere to traditional summary judgment standards despite Nguyen's cite to and argument regarding substantial evidence in the Record. The District Court's order has the following infirmities each of which support a reversal and remand of this case to the District Court: 1) misstates Nguyen's claims and purpose in presenting and arguing evidence of race as an improper factor in Nguyen's employment, 2) holds Nguyen to a higher burden to establish evidence of pretext than the 5th Circuit requires by failing to cite to both parts of this Court's definition of the pretext burden in *Sandstad*, 3) cites to "uncontroverted" evidence to support its ruling that Nguyen is not similarly situated to her co-workers performing the same duties; the irony being that "uncontroverted" evidence is nothing more than unsupported, contradicted, and subjective assertions, 4) fails to acknowledge evidence of disparate treatment and thereby finds that Nguyen did not meet her prima facie case, 5) fails to acknowledge Nguyen's evidence of pretext and thereby finds that Nguyen did not meet her pretext burden, 6) fails to acknowledge evidence establishing the rebuttal of UT's claim to the Same Actor inference, and 7) weighs evidence, draws inferences in UT's favor and fails to draw all reasonable inferences in Nguyen's favor through much of the District Court's order.

## ARGUMENT AND AUTHORITIES

### Standard of Review

This Court reviews *de novo* a District Court's grant of summary judgment, applying the same legal standards as the District Court.[4]

### Grant of Summary Judgment

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[5] The court "must disregard all evidence favorable to the moving party that the jury is not required to believe."[6] Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when that judge is ruling on a motion for summary judgment.[7] The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor.[8]

Given the fact that UT's allegations are unsupported by factual detail and documentation and involve entirely subjective criteria, summary judgment should

---

[4] *Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.,* 400 F.3d 260, 262-63 (5th Cir. 2005).

[5] *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 764-65 (5th Cir. 2002)(citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[6] *Hunt* at 765.

[7] *Anderson* at 255.

have been denied since it has been consistently held that "it is inappropriate to decide as a matter of law that an employee is subject to adverse employment actions because she has "failed to meet entirely subjective … criteria."[9] And because the decision of whether the use of subjective criteria is legitimate or merely a pretext for discrimination "can only be made by weighing [UT's] credibility" it should be left to the jury to evaluate the truthfulness of the proffered subjective criteria as applied disparately to Nguyen.[10]

**Issue 1: <u>Race as a Motivator</u>: Nguyen is visibly Asian. Esposito gave Nguyen written "Expectations" regarding behavior in "American/Texas business culture." Esposito knew that Nguyen had worked in "Texas" for the previous three years and never worked outside of "America." Three months later, Esposito gave written "Expectations" to a White employee without any mention of "American/Texas business culture." Esposito testified that Nguyen doesn't act like "most Asians." Did the Court err in finding that Nguyen produced no evidence of racial motivation?**

Nguyen focuses her race as a motivator argument on evidence of improper racial motivation on Esposito's expectations of how Asians should behave and his "impression" that Nguyen did not conform to his expectation.[11] Also, to be clear, this "Expectations" document is presented and argued, not as forming an

---

[8] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-9 (1970).

[9] *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001)(citing to *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993)).

[10] *Medina* at 681-82.

[11] Nguyen does not require the evidence of race as a motivator associated with the "Expectations" document in order to prevail on this appeal. Nguyen can simply rely on the substantial evidence of racially disparate treatment she suffered leading up to her termination, as discussed in Issues 3 and 4, below. However, the direct reference to race engaged in by the

actionable adverse action.[12]   Rather, the "Expectations" document and associated

evidence is simply cited as assisting her in raising a fact question that Esposito's

actions against Nguyen's employment were improperly influenced by his

perception that Nguyen's behavior was unacceptable to him compared to the way

"most Asians" act in his experience.  This is particularly pertinent evidence given

the fact that Esposito was principally responsible for Nguyen's termination.[13]

R206, R149-52.

The *Price Waterhouse* line of cases made actionable the application of

stereotypes against protected class employees.[14]  In *Price Waterhouse*-type fact

patterns, the standard analysis of looking for racial animus does not apply.

Although the Court focused on specific proof in *Price Waterhouse*, it did …"not

suggest a limitation on the possible ways of proving that stereotyping played a

motivating role in an employment decision…." In fact, the Court never required a

showing of animus toward the plaintiff, instead *Price Waterhouse* held that an

employer who acts on the basis of a belief that a woman must act or not act in a

particular way, has acted on the basis of gender and in violation of Title VII.  *Price*

*Waterhouse*, 490 U.S. at 250. Given that the Plaintiff in *Price Waterhouse* was

---

decision maker, Esposito, in this case clearly supports Nguyen's claim that her race more likely than not played a factor in her disparate employment experience at UT.
[12] Statutes of limitations alone would restrict such a claim.
[13] *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226-27 (5th Cir. 2001)(citing *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110)
[14] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)

only required to show that her employment was negatively impacted by her failure to conform to a gender-based behavioral expectation (*Id.*) and not that the employer held animus against all women, the question of whether the employer got along with other women, married one, or had one for a child was not relevant to the inquiry.

Likewise, the evidence adduced in this case establishes that Esposito testified to definite opinions regarding how Asians act in the work place (RE7:1-4), that Nguyen did not conform to those expectations (*Id.*), that Nguyen needed to change her behavior (RE5), that race is a consideration for Esposito (*Id.*, R812, R813), and that Nguyen is the only Asian that Esposito has come across that didn't act like "most Asians." (RE7:3, R296) Evidence pointed to by UT and the District Court regarding Esposito's fine relationship with all other Asians who acted in accordance with Esposito's Asian expectations only serves to support Nguyen's claim that Esposito allowed his impression that Nguyen did not act like other Asians to negatively affect his treatment of Nguyen.[15] RE7:1-4

The principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the protected group as a whole.[16] Title VII, does not "give an employer license to discriminate against some employees on the basis of

---

[15] *Price Waterhouse*, 490 U.S. at 250.

[16] *Connecticut v. Teal*, 457 U.S. 440, 453-54, 102 S.Ct. 2525, 2533-34, 73 L.Ed.2d130 (1982); *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 708,98 S.Ct. 1370, 1375, 55

race or sex merely because he favorably treats other members of the employees' group."[17] Indeed, "a given employer may discriminate against an individual white worker even when no evidence demonstrates that the employer generally favors workers who belong to historically disadvantaged groups."[18]

In its motion for summary judgment and reply, UT invites the District Court to weigh evidence and draw inferences in UT's favor related to possible excuses for Esposito's "Expectations" document and the District Court apparently took up that invitation and went even further, coming up with additional potential inferences on behalf of UT. The following five paragraphs chronicle these inferences in favor of UT and Nguyen's evidence and reasonable inferences raising a fact question with each one.

**1)** UT's proffered explanation from Esposito: **It was Nguyen who raised race first to Esposito and Levy and Esposito was merely responding to Nguyen's race-based comments. RE7:1-4.** Despite UT's argument, and the District Court's finding, that the "Expectations" document does not necessarily address Nguyen's race (R64, RE3:11-12), this argument establishes an admission by UT of the "Expectations" direct reference to race. That is, Esposito testified that he wrote the phrase "American/Texas business culture" in direct response to Nguyen's alleged

---

L.Ed.2d 657 (1978*); Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984).
[17] *Teal*, 457 U.S. at 455, 102 S.Ct. at 2535; *Nix*, 738F.2d at 1186.

comments on race to both Esposito and Levy. RE7:1-4. Nguyen responds with her own testimony that she made no such references to her race during her meetings with Esposito and Levy. RE6:1. Nguyen's sworn testimony refuting Esposito's and Levy's testimony should be sufficient to raise a genuine issue of fact, however, Nguyen goes further to cite to the fact that Esposito's and Levy's detailed affidavits defending against Nguyen's claim of discrimination make no mention of any such comments from Nguyen. R336-52, R436-44. Levy provided no testimony in her deposition alleging that Nguyen had made comments about her race or anything like Esposito testified that Levy had reported to him about her meeting with Nguyen. R242-43. Additionally, there are also no emails or other communications mentioning or discussing such alleged comments from Nguyen, thus further establishing the lack of credibility of Esposito and Levy (see pretext analysis, Issue 5, below) which should not even be at issue due to the proscription against weighing evidence at the summary judgment stage.

**2)** The District Court's inference: **Nguyen was the only employee to get such an "Expectations" document because her reputation was so bad, rightly or wrongly, from her time in the Dean's Office, RE3:FN8.** Even if Nguyen's reputation existed and was an actual factor in her transfer to CLE from the Dean's Office, which is disputed with evidence, it would not explain Esposito's inclusion

---

[18] *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992).

of the phrase "American/Texas business culture." That is, Esposito admitted that he was aware that Nguyen had never worked outside the United States and had worked in Texas for several years before moving to CLE. RE7:2. Therefore, the insertion of "American/Texas business culture" is simply not addressed by the assertion of an issue with Nguyen's reputation of being difficult to work with as admitted to by Esposito. RE7:2.

**3)** UT's attempt to render the "Expectations" document incomparable: **Nguyen's "Expectations" cannot be compared with the "Expectations" given to the White male three months later, because they are not similarly situated, R828.** The "Expectations" document Esposito gave to the White employee three months later did not include the words "American," "Texas," or "culture." R715-16. Although it is accurate that the "Expectations" document given to the White male three months later was in association with a disciplinary action and not as an initial statement of "Expectations" as with Nguyen, UT has produced no evidence or argument to explain why this would make the document sufficiently dissimilar to remove it from reasonable consideration at this stage. The evidence establishes that both documents convey expectations related to personal interactions and are not differentiated based upon their respective job titles or duties. In short, UT's argument is factually unsupported and therefore conclusory. Therefore, Esposito has no business-related non-racial explanation for his use of this language; leaving

race as the only reasonable differentiation, which goes well beyond meeting the burden of only asserting one reasonable inference among several.

**4)** UT's and the District Court's effort to alter and increase the burden on Nguyen beyond her claim, the evidence, and the *Price Waterhouse* rubric: **Inferring that Nguyen must argue that the only Asian expectation that Esposito must have to be actionable would be a negative stereotype, RE3:12, R831-32.** To be clear, Nguyen does not need to prove that Esposito expected Nguyen to conform to any particular negative Asian stereotype to raise a fact question regarding the improper influence of race on Esposito's treatment of Nguyen. Nguyen only need show that there is some evidence which establishes that Esposito held an opinion that Nguyen did not act the way he thought Asians should and that he likely acted on that opinion in his treatment of Nguyen. Esposito's deposition testimony that his perception of Nguyen's behavior as negative in comparison with what "most Asians" do (RE7:3-4), and his having written an "Expectations" document seeking to get Nguyen to change her behavior to conform to what "most Asians" do, could not be a clearer example of such evidence. Esposito also testified that, from his experience, all Asian employees that have worked with him were always "very respectful and didn't express these negative statements [in the "Expectations" document]" like Nguyen did. *Id.*

**5)** UT's and the District Court's complimentary inferences in favor of UT: **No evidence that Esposito expected Nguyen to conform to an Asian stereotype (RE3:11); or conversely, that the evidence establishes that Esposito expected her *not* to conform to racial stereotypes, (*emphasis in original)* R831.** As already addressed above, the evidence of Esposito's testimony regarding his having written the "Expectations" document as a direct result of his observations of Nguyen's alleged behavior and that it did not comply with his observations and experience of the way "most Asians" act, firmly establishes (well beyond a reasonable inference) that Esposito fully required, not just expected, Nguyen to modify her behavior to that of the way all other Asians he had worked with behaved.  Again, there is no requirement under the law, that Nguyen need show that Esposito required Nguyen to conform to a negative Asian stereotype to prevail in raising a fact question as to the improper influence of race on Esposito's treatment of Nguyen.

Nguyen's Record evidence refutes or at a minimum raises genuine issues of fact as to each of the above findings/arguments/inferences, therefore these excuses should be given no deference or consideration by this Court as they require the improper weighing of evidence and the failure to draw all reasonable inferences in Nguyen's favor.

**Issue 2: <u>Misapplication of Law</u>: A court commits reversible error if it misapplies the law when granting summary judgment.  The 5th Circuit has not**

**applied a pretext-plus standard since *Reeves*. The District Court cited *Sandstad* for the proposition that to meet its burden to show pretext, the plaintiff "must produce evidence which supports an inference of improper animus behind the decision to terminate." Did the District Court err in its application of the pretext burden in this case?**

Since the Supreme Court decided *Reeves* in 2000 rejecting the "pretext plus" standard of review, this Court has decided many cases consistently following the holding in *Reeves* related to the plaintiff's burden to establish pretext, including *Sandstad*.[19] In its motion for summary judgment, UT cited to *Sandstad*, not for the holding on pretext, but for the proposition that discriminatory comments are only actionable if made by the person primarily responsible for the termination. R64.

In contrast, the District Court cited to *Sandstad* to define Nguyen's burden to establish her showing of pretext. However, the District Court did not include the entire holding explaining the plaintiff's pretext burden, instead truncating the single sentence holding with the following quote in its order granting summary judgment, "the employee must produce evidence which supports an inference of improper animus behind the decision to terminate." RE3:15. The District Court, without discussing any of Nguyen's evidence pointed to evidence that UT had produced of Esposito's positive relations with other Asians in support of its holding that "[n]one of the evidence supports an inference [Esposito's] conclusion

---

[19] *Sandstad v. GB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002)

[that Nguyen was not performing satisfactorily] was mere pretext."[20] *Id.*

The problem with the District Court's truncation of the *Sandstad* holding is that it misstates Nguyen's burden by limiting her ability to show pretext beyond the holding in *Reeves* and all other 5th Circuit cases since *Reeves*, including *Sandstad*, by requiring Nguyen to establish pretext by presenting evidence of racial animus in addition to her prima facie burden. Of course, that is exactly what the pretext-plus standard required that *Reeves* overruled. The entire holding in *Sandstad* defining the plaintiff's pretext burden to show pretext is a single sentence:

> "Appellant must adduce evidence supporting an inference that Appellee's motive was [discriminatory] animus, *or at the least, that Appellee's explanation of its motive is false*." (*emphasis added*)

The District Court failed to apply, or even cite to, the italicized portion of this holding in *Sandstad* even though it cannot be disputed or misconstrued that Nguyen's MSJ Response relies on her evidence and argument regarding the falsity of UT's allegations in support of her termination as the basis for meeting her pretext burden. RE8:5-8, RE8:11-18. The District Court provided no explanation for its truncation of the *Sandstad* holding.

The District Court's misstatement of the pretext standard directly resulted in its grant summary judgment against Nguyen based upon its ruling that Nguyen failed

---

[20] Nguyen has addressed the issue of the relevance of Esposito's relationships with other Asians as being either supportive of her claim of improper racial influence due to Esposito's expectation that she behave like other Asians he has worked with or, at a minimum, requiring the court to

to meet this misstated and higher burden than required by this Court's undisturbed precedents following the Supreme Court's ruling in *Reeves*.  Thus, the District Court has engaged in reversible error by misstating the law on an issue which directly impacted its ruling on Nguyen's claims.  By failing to apply the proper pretext burden, the District Court has not only invaded the province of the jury to decide matters of credibility (and mendacity), but also has failed to follow this Court's unambiguous precedents. As such, Nguyen requests that the grant of summary judgment be reversed and this case remanded to proceed to trial on the merits.

---

weigh evidence and draw inferences in UT's favor, neither of which support the grant of summary judgment in this case.

**Issue 3: <u>Prima Facie Case-Similarly Situated</u>: The District Court found, but did not cite to, "uncontroverted evidence [Nguyen] failed to perform any of the thirteen special projects she was hired to carry out." No mention of failing to perform thirteen special projects in termination letter. Evidence shows Nguyen performed some of the special projects. Esposito transitioned Nguyen to predominantly Program Coordinator ("PC") duties after two PC's left UT. Did the Court err in finding that Nguyen was not similarly situated?**

The "similarly situated – nearly identical" line of cases ensure that claims of disparate treatment are decided based upon the protected characteristic and not some otherwise business-related factor as determined by the employer.[21] The "similarly situated" analysis is a fact intensive one. "When assessing whether employees are similarly situated, courts consider whether the employees were employed in the same job position, whether the employees had different job responsibilities, and whether the same supervisor was involved in the decision making."[22] This fact intensive analysis also serves to ensure fairness to the plaintiff so that an employer is not simply making a distinction based upon merely a job title or otherwise fabricating "dis-similarity" or uniqueness in an employee to game the law and thereby avoid liability. In short, an employer should not be allowed protection from liability by manufacturing a lack of similarity with the plaintiff by disparately mistreating and/or falsely accusing the plaintiff of misconduct or

---

[21] *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007), *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360(5th Cir. 2004).

[22] *Puente v. Potter,* Civil Action No. SA-05-CA-747-XR, 2007 U.S. Dist. LEXIS 23708, 2007 WL 869584, at *6 (W.D. Tex. March 20, 2007) (citing *Williams v. Gonzales,* No. 1:04-CV-342, 2005 U.S. Dist. LEXIS 38838, at *35-36 (E.D. Tex. Dec. 14, 2005); *Coleman v. Exxon Chem. Corp.,* 162 F. Supp. 2d 593, 608 (S.D. Tex. 2001)).

unreasonably focusing on an aspect of their employment which is not relevant to the issue of comparability.

Nguyen has fallen victim to this misuse of the "similarly situated" analysis in this case. Specifically, UT falsely accused Nguyen of performing so badly and had such a uniquely bad reputation that the disparate treatment she experienced was simply earned and therefore she was not similarly situated with the other PC's (R55); while the District Court went further holding that Nguyen is the only employee hired to do a job that she didn't do (i.e., thirteen special projects and "uncontroverted evidence shows [Nguyen] failed to perform any of the thirteen special projects"), thus making her not similarly situated with any other employee.[23] RE3:9-10. However, neither of these positions should survive this Court's scrutiny using traditional summary judgment standards applied to the evidence presented and argued by Nguyen in the Record.

Nguyen provided testimonial evidence from herself and a co-worker and documentation to show the following:

- Nguyen was transitioned from Special Projects to a predominantly PC role, R84,
- Nguyen was in fact doing her job and doing it well, R310-12,
- Nguyen was being helpful to other employees, R312, R314-15.

---

[23] Even UT did not join the District Court's holding in its Response to the Motion to Reconsider that Nguyen's alleged non-performance on the thirteen special projects made her not "similarly situated" to any other employee. Instead, UT simply pointed to the fact that Esposito had complained about Nguyen's performance on special projects generally as one of the bases for her termination without addressing the absence of documentation in support of that allegation.

- UT assigned Nguyen the heaviest PC workload for 11 months in a row, RE6:3,
- UT made no mention of special projects work, assignments, or deadlines for at least eight months prior to being accused of not performing special projects, R392-96, R398,
- Nguyen had performed special projects that were helpful to CLE,[24] R202, R314-15,
- No mention of any failure to perform any or all of the thirteen special projects in either the short-term renewal or termination notices. R392-96, R398.

As a result, UT's argument that Nguyen was not similarly situated because she performed decidedly worse than all other PC's would require the Court to weigh its evidence over that of Nguyen's in order to rule as a matter of law that Nguyen was not similarly situated. Additionally, given the lack of documentation and the lack of measurable data to support its allegations against Nguyen, UT's allegations are all subjective in nature and therefore do not support the grant of summary judgment. *Medina* at 681.

In contrast, the District Court's holding relies on "uncontroverted evidence" of a measurable factor (i.e., zero special projects completed out of thirteen assigned), which, if true, could form the basis of a ruling as a matter of law that Nguyen was

---

[24] The District Court suggests that Nguyen did not rebut UT's "uncontroverted" yet uncited evidence because she did not address the "significant" point of "whether she performed any of the thirteen special projects she was hired to do." However, the District Court only quoted one paragraph of seven related to her special project work described in Nguyen's sworn statement (RE6:2), disregarded the documents that Nguyen produced showing her special project work (R735-38, R742-47, R764-65), disregarded the testimony from Koepp that Nguyen had performed special projects that were helpful to her and others (R310-12), and disregarded the fact that there is no mention of the thirteen special projects in particular as forming the basis for

not similarly situated to any other UT employee and therefore that she failed to meet her prima facie case. However, the District Court and UT have failed to cite to any evidence that: 1) Nguyen failed to complete any of the thirteen special projects, much less uncontroverted evidence, or 2) Nguyen was terminated for failing to complete any of the thirteen special projects. Additionally, as demonstrated in the bulleted evidence above, even if there were evidence that Nguyen has failed to perform, or was fired for failing to perform, all of the thirteen special projects, she has produced evidence to the contrary thus raising a fact question sufficient to survive summary judgment.

To further solidify Nguyen's comparability/similarity to the other PC's to assist her in meeting her prima facie case, Nguyen points to her termination notice which contains five allegations; four of which relate to her PC duties and not Special Projects. R413-14. Neither UT nor the District Court have cited to any evidence to explain why Nguyen should not be allowed to compare the way she was treated from the way in which the other PC's were treated. Again, even if there were any evidence to legitimately explain the alleged lack of similarity, Nguyen has presented sufficient evidence of her performance as a PC forming the majority of her performance and the basis of her termination.

### Issue 4: <u>Prima Facie Case-Disparate Treatment</u>: Evidence shows UT

Nguyen's termination since there was no such allegation against Nguyen in the Record. R399-400, R413-14. No explanation is given for the District Court's disregard of Nguyen's evidence.

**subjected Nguyen to racially disparate treatment in more than eight different employment actions. Evidence shows UT knowingly and disparately made false allegations to terminate Nguyen. Did the Court err in finding that Nguyen produced no evidence of racially disparate treatment?**

As discussed in Issue 3, above, Nguyen must show that she was treated differently than similarly situated employees that are not Asian as a means of establishing her prima facie case.[25] Nguyen uses this section to discuss her evidence of racially disparate treatment. In her MSJ Response (and Appendix), Nguyen chronicled nearly three pages of specific examples (and an additional page in the Appendix) of racially disparate treatment with cites to the Record that support each factual allegation. RE8:1-4, (RE8:9-10).

The District Court avoided addressing Nguyen's substantial evidence of racially disparate treatment with its findings on the thirteen special projects, which the District Court used as its basis to hold that Nguyen was both not similarly situated to any other employee and was therefore legitimately terminated. However, as argued and presented within Issue 2, above, the District Court's findings and holdings are both unsupported by evidence in the record and contradicted by Nguyen's evidence in the record and all reasonable inferences that could be drawn therefrom.

The District Court even chronicled 8 of Nguyen's evidentiary examples of disparate treatment she suffered. RE3:9. However, rather than address this

evidence, the District Court instead did more to discuss and characterize evidence of Nguyen allegedly being treated well and to point to one example where an employee may have been treated similarly to Nguyen related to only one of the more than eight categories in which Nguyen was treated differently than all other PCs. RE3:10(citing to R712).[26] The District Court somehow found this one piece of evidence, that even UT did not argue as an issue, was of greater weight and importance than Nguyen's multiple examples of disparate treatment. Of course, this weighing by the District Court violates the summary judgment standard and transforms the inquiry from one of law into one of fact and specifically against the non-movant, instead of in her favor.

Nguyen's evidence of racially disparate treatment may be distinguished into two general categories: 1) no evidence that any other employee was treated like Nguyen, and 2) evidence that Nguyen and other employees did exactly the same thing and only Nguyen was penalized. For purposes of this appeal, Nguyen will focus this Court's attention on the second category.[27] Specifically, Nguyen adduced evidence that other co-worker(s) had been engaged in the same or similar

---

[25] *Berquist* at 353, and *Bryan* at 360.

[26] However, this evidence is rendered moot by Levy's admission in her deposition that Nguyen is the only employee that was required to request leave on planned absences (not simply leaving the office as in the email cited to by the District Court – rendering that email irrelevant as not being similarly situated to the circumstances of the alleged disparate treatment) both in person and in writing. R249-50.

[27] Nguyen still relies on both categories as supporting her assertion that she has exceeded her burden to establish the racially disparate treatment element of her prima facie case.

conduct as Nguyen but did not suffer any criticism, much less short-term renewal or non-renewal regarding multiple actions. R315-19, RE8:1-4, RE8:10-11.

Nguyen will address a few examples of her evidence here, but refers this Court to her extensive catalogue of disparate treatment in her MSJ Response and Appendix. *Id.*

**1) "Need Description" template language:** Nguyen was the only employee that was criticized for language use that every PC was using for a period of years, given the fact that the subject language was automatically contained within the templates that all PCs were required to use. R123. Koepp admitted to having engaged in the use of language in the templates ("Need Description" and "2-3 sentences")(R317-18), that the templates have been in place and used by the PCs for years (R123, R318), that she had not been criticized for using that language until after Nguyen was terminated (R318), and that it made no sense to be criticized for language that is present in the templates which Esposito requires the PC's to use. *Id.* UT could offer no evidence to explain either the racial disparity as to why Nguyen was criticized when no one else was or why Koepp was criticized about her use of this language, but not until after Nguyen was terminated some eight months or so after Nguyen was criticized for using this language.

**2) Template Use:** Nguyen was placed on short-term renewal and terminated in part due to her alleged failure to use departmental standards and templates,

however, no other PC was criticized, much less, disciplined for such conduct. R401-02, R413-14. Koepp testified that during her time as a PC, which spanned several years, there were multiple meetings with all the program coordinators regarding using different templates; that in these particular meetings Nguyen was never criticized for her template use; and that the use of multiple templates continued to be an issue at CLE even through December of 2011 when Koepp stopped doing program coordinator duties. R309-10. Although, Koepp recalled that Nguyen had been counseled about template use and formatting one on one, Koepp could not remember particulars and could not be certain if Nguyen was counseled in a training manner, since Nguyen was the newest PC in CLE. R310-11.

Given the above listed evidence, Nguyen has shown that all PCs had issues with following departmental standards and instead of being disciplined and terminated, they were simply called into meetings to discuss their opinions about the standards and how best to work with them.  To hold that UT was justified in terminating Nguyen for this conduct would require the weighing of evidence, a disregard of Nguyen's evidence and inferences drawn in favor of UT; all in violation of summary judgment standards.

**3) Comp Time:** All PCs would from time to time be faced with the accrual of Comp Time being state employees. Levy testified that all CLE employees were required to get pre-approval to accrue Comp Time. R263-64. However, Nguyen

provided three pieces of evidence raising a fact question regarding the racial disparity and pretextual nature of this assertion by Levy that all CLE employees were treated the same: a) only Nguyen had received her instructions about getting preapproval of Comp Time in writing (R720); b) UT policy on the accrual of Comp Time has no requirement that UT employees, like Nguyen and the other PCs, have to get pre-approval to accrue Comp Time (R263); and c) Koepp testified that she did not have to get preapproval from Levy or anyone at CLE to accrue Comp Time. R320-21.

**4) Late PC work:** Nguyen was terminated in part for allegedly not completing her work timely and or turning in work incomplete. R413-14. During her deposition, Levy admitted to the following evidence which establishes that Nguyen was treated differently from the other non-Asian PC's: the document showing that program deadlines showed that several PC's including Nguyen were turning in work later than their deadlines (R239), however, Levy could not testify if the late work on the programs associated with Nguyen were due to Nguyen's performance or the performance of other employees (*Id.*); several PC's, not including Nguyen, had their deadlines moved back giving them more time to perform (*Id.*), while Nguyen's deadline was shown to have been moved up, thereby shortening Nguyen's time to perform. *Id.* Nguyen was the only PC disciplined and terminated for late work. R239. There is no documentation of Nguyen turning in incomplete

work. In fact, the only testimony from someone other than Nguyen's accusers, who have only made conclusory allegations without documentary support regarding missed deadlines and incomplete work, Koepp, affirms that Nguyen had a considerable workload with no noticeable difference in the quality of her work (R324), that Nguyen's work was comparable or better work than her own (R325), that Nguyen was helpful to her (R312), that Nguyen was never discussed in the office as being mean, nasty, uncooperative, or any negative descriptions of her interactions with the co-workers (*Id.*), and that Nguyen was very good at bringing information together like the charts Nguyen made which were very helpful. R315.

**5) Planned Absences:** As discussed in footnote 26, above, Levy admitted that only Nguyen was required to report planned absences in writing and in person, even though all employees would have need of planned absences and Levy could not recall any particulars or point to any documentation of having a problem with Nguyen regarding planned absences. R249-50, R396. Koepp also testified that she was not so required to do both like Nguyen. R321.

**Issue 5:  Pretext: UT allegedly terminated Nguyen for not performing her job.  During the same period Nguyen allegedly could not perform her job, UT assigned Nguyen more work than any other PC.  UT's allegations against Nguyen are undocumented and subjective. Evidence shows UT's allegations against Nguyen were false, fabricated, and/or contradicted. Did the Court err in finding that Nguyen produced no evidence of pretext?**

To show pretext at the summary judgment stage, as discussed in Issue 2, above, Nguyen "must adduce evidence supporting an inference that [UT]'s motive was

[race]-based animus, or at the least, that [UT] 's explanation of its motive is false."

*Sandstad* at 899.  This requirement is derived from the

> "general principle of evidence law that the factfinder is entitled to consider a
> party's dishonesty about a material fact as 'affirmative evidence of guilt.' …
> Moreover, once the employer's justification has been eliminated, discrimination
> may well be the most likely alternative explanation, especially since the
> employer is in the best position to put forth the actual reason for its decision."
> *Reeves*, 530 U.S. at 147.

In this case, UT's dishonesty is more than simply a fact question; it is palpable.

Despite Nguyen's 3 pages chronicling her evidence and providing the basis for a

reasonable inference that UT's explanations for its actions against her are

pretextual (R668-71, R687-89, and R992-99), the District Court held that Nguyen

"failed to produce evidence showing UT Law's proffered legitimate reasons were

mere pretext;" suggesting that Nguyen was "merely disputing [UT's] assessment

of [Nguyen's] work performance." RE3:15.  However, even a cursory reading of

Nguyen's evidence and argument shows that she does anything but merely dispute

UT's assessment of her work:

- she establishes contradictory testimony from Esposito and Levy, RE8:5-8, RE8:11-18,
- she directly refutes allegations from Esposito and Levy, *Id.*
- she affirmatively provides detail and evidence to support her testimony, *Id.*
- she establishes the falsity of Esposito's and Levy's testimony, *Id.*
- she establishes the lack of any documentary evidence supporting UT's conclusory allegations against her as contained in the short-term renewal and termination notices, *Id.*

- she establishes the falsity and lack of any credible evidence to support the allegations used as the basis for the short-term renewal and termination of her employment. *Id.*

Several choice examples include: **1)** the fact that Esposito and Levy deny that Nguyen produced any special projects (R401-02, R413-14), but Levy and Esposito later admit that in fact Nguyen did produce some special projects (R189, R191) and Nguyen and Koepp testified that Nguyen had created several special project tools which were very useful to CLE. RE6:2, R314-15, R628. **2)** Nguyen was alleged to have been performing so poorly as a PC that she had to be short-term and then terminated (R401-02, R413-14), however from March 2009 through to January 2010 (the month that Nguyen was notified of her termination) Esposito assigned Nguyen the heaviest workload compared to every other PC (R742-47, R760-61, RE6:3), even though Nguyen had the least experience of any PC (R241) and was allegedly not keeping up, allegedly not meeting deadlines, allegedly causing additional work in oversight by management, and allegedly turning in incomplete work.[28] R401-02, R413-14. **3)** If these allegations were true, there would be documentation to support these allegations and there is no such documentation other than the conclusory allegations contained in the short-term renewal and termination notices. *Id.* In fact, when Levy was questioned regarding the assignment of programs to Nguyen during this period of time, Levy testified

that although program assignments were Esposito's decision, she would have discussions with him about it and that the only considerations that were discussed were whether her brochures were due or not. R240-41. Levy made no comment about Nguyen not keeping up or not turning in work timely or any other performance deficiency as a basis for deciding whether Nguyen should be assigned any more conferences. *Id.*  **4)** Nguyen was allegedly given one-on-one training from Levy 2-3 days per week (R413-14), however, at the same time, Nguyen is being terminated for refusing to attend daily meetings. *Id.* That makes no sense. Additionally, there is no documentation of any of these meeting requests, or documentation of the refusals to attend. **5)** Perhaps the only measurable allegation against Nguyen is that Nguyen was terminated because during the period October through December 2009, while Nguyen was supposed to have been given a chance to improve her performance, Nguyen was allegedly sent "at least twenty notifications giving examples of performance deficiencies via email so that [she] would understand the concerns with [her] performance." R411, R414. However, during that period, Nguyen did not receive twenty emails of any kind, much less regarding performance deficiencies. R717-734. Of the only seventeen total emails produced by UT in response to Nguyen's discovery requests seeking these "at least" twenty emails (*Id.*), there were only five that can be even remotely

---

[28] "Joana has 5, Sarah Jane has 9, I, Lynne, have 11, Margie has 3, and Chrystie has 16." R315,

considered dealing with performance deficiencies. R723, R731-34. However, even these five emails are related to work issues which had not been raised before and which were not repeated after each email such that there is no evidence of Nguyen's failure to improve and/or sustain her performance as UT falsely alleged against her as alleged justification for her termination. R413-14.

In short, Nguyen has produced substantial evidence that UT's reasons for her termination are false, contradictory, and unworthy of credence. Nguyen has more than met her burden to raise a fact question on all reasons alleged against her by UT and thereby requests that the grant of summary judgment be reversed and this case remanded to proceed to trial on the merits.

---

R747.

**Issue 6:  Same Actor Inference Does Not Apply:** Nguyen's supervisor admitted that he hired Nguyen at the request to the Dean.  The Dean paid Nguyen's salary making her a "free" employee.  Within weeks of Nguyen's hiring, Nguyen's supervisor made three separate unsolicited and non-business-related references to Nguyen's race.  Did the Court err in finding that Nguyen had produced no evidence to rebut the Same Actor inference?

The Same Actor inference is a rebuttable inference based upon the presumption that if the same person that fired the employee also hired that employee within a relatively short period of time that would present some evidence that the decision maker did not have discriminatory-animus or the hiring presumably would not have occurred.  Of course, the Same Actor inference is rebuttable due to the fact that there are myriad evidentiary contingencies that would render inaccurate the presumption of an absence of discriminator animus.  In this case, the District Court held, without any explanation or cite to any evidence, that Nguyen, "failed to rebut [the same actor inference] with any competent evidence." (RE3:14) UT also argued among other things that Esposito "had no real reason to go to the trouble of creating a job for Nguyen." R833.

However, Nguyen asserts that either she has raised a fact question as to the Same Actor inference or it simply does not apply in this case.  Specifically, Nguyen's produced evidence and reasonable inferences that Esposito hired not through a discrimination-free process but in response to a direct request from his superior, Dean Sager.  Both Dean Sager and Esposito admit that Nguyen was hired as a favor to the Dean. R151, R165-66. Esposito had misgivings and would not

have hired Nguyen if the Dean did not agree to pay Nguyen's salary. R148, R165-166, R602.  Esposito's hiring of Nguyen also cannot be considered race neutral given the fact that Esposito made at least three different non-business related references to Nguyen's race within weeks of her being hired.   Additionally, Esposito attempted to explain away his reference to Nguyen's race in the "Expectations" document by testifying that he was merely responding to Nguyen having made racially specific comments during his and Levy's interviews with Nguyen. RE7:1-4. Esposito's credibility is in question here, given the fact that Nguyen has denied making any references to race during her interview with Esposito (RE6:1), Esposito's and Levy's detailed affidavits make no such mention of any racial comments by Nguyen during her interviews (or any other time) (R334-52, R436-44), and there are no emails or other documentation of Esposito or Levy having heard Nguyen make overt references to her race during their interviews with her. R372. The evidence, at the very least, presents a genuine issue of material fact.

Lastly, the Same Actor inference applies to cases where discriminatory animus is a prerequisite, such that if there is an absence of that animus based upon the presumption, then the cause of action is in jeopardy absent evidence to rebut the absence of animus.   However, as discussed above associated with the *Price Waterhouse* analysis, there is no need to show racial animus to prevail in such a

claim. The plaintiff need only show that there is some evidence that she suffered an adverse employment action because she did not behave in a stereotypical was that the employer expected. Therefore, as in *Price Waterhouse*, the absence of discriminatory animus is not fatal to the Plaintiff's claim and therefore, the Same Actor analysis would not be relevant.

**Issue 7: <u>Weighing the Evidence</u>: The District Court weighs evidence in its grant of summary judgment by referring to UT's evidence as "well-populated," "considerable," "a mountain," and "abundantly established." In it's opinion granting summary judgment, the District Court drew inferences in UT's favor multiple times, and consistently failed to draw all reasonable inferences in Nguyen's favor. Did the District Court err by weighing evidence and improperly drawing inferences?[29]**

Weighing evidence and failing to draw all reasonable inferences in the non-movant's favor by the District Court at the summary judgment stage of litigation indisputably violates longstanding precedential requirements in the United States.[30]

Nguyen takes this opportunity to chronicle several examples of the District Court violating the summary judgment standards and otherwise acting in favor of UT rather than Nguyen.[31]

---

[29] Each quote included in the Issue 7 statement, above, comes from the District Court's Order granting summary judgment. (See: RE3:5, RE3:11(FN8), RE3:14, RE3:16, and RE4:4(FN2), respectively).

[30] *Anderson* at 255.

[31] In its order granting summary judgment, the District Court included a cite to *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) for the proposition that, "A court is not required to search through the record for evidence to support the nonmovant's case." RE3:7. However, this suggestion that Nguyen had not cited to sufficient evidence and was merely relying on the District Court to "search through the record" is wholly inaccurate. In her response, Nguyen had 383 cites to 237 different pages of evidence, while UT only had 145 cites

**1)** The District Court found no dispute that Nguyen was removed from the Dean's office due to her reputation and her inability to get along with other employees. RE3:2(FN3) However, Nguyen presented evidence and argued that she was never disciplined, counseled, evaluated, or otherwise put on notice that her relationship with other employees was either a problem for the Dean or the reason that she left the Deans office. R144-47. The only alleged dispute that Nguyen recalls occurring happened within the first couple of months that Nguyen started he job in the Dean's office and never recurred (R144), thus making that evidence very old and not reasonably linked with her move from CLE. [32]   Dean Sager admitted and Nguyen testified that the only reason discussed between them as a reason that Nguyen was leaving the Dean's Office and transferring to CLE was related to Nguyen's request to telecommute upon return from maternity leave. R147-48, RE6:1. Nguyen received two raises during her two years in the Dean's office, including one just before her move to CLE. R146, R736. Dean Sager went out of his way to locate a position where Nguyen would be able to telecommute and also agreed to pay her salary at that new position. R602. Esposito admitted that while

---

to 124 different pages of evidence.  Additionally, in the District Court's order granting summary judgment, of the 18 separate pages of UT's evidence that the District Court cited to, UT had only cited to one of those pages, whereas, Nguyen had cited to four of the seven pages of her evidence that the District Court cited to.

[32] The District Court paid particular attention to this one incident Emily Kadens, referring to it as "perhaps the most important instance in question." RE3:2-3.  However, this simply goes to show Nguyen's argument/inference that this one incident that happened in 2006 cannot reasonably

employed at CLE, Nguyen never acted like she was reputed to have acted in the Dean's office and there is no mention of that conduct in Nguyen's termination notice. R413-14. No evidence was produced by UT establishing why Nguyen had to leave the Dean's office when she did.   Reasonable inferences that could be drawn from this evidence include: a) that Nguyen was such a good employee, that Dean Sager wanted to assist her in retaining an employment position with UT even though his office could not support telecommuting (R602), b) since there was no evidence of anything that happened to cause the Dean to remove Nguyen from his office at that time (R145-46), it would be reasonable to infer that Nguyen's reputation, rightly or wrongly earned, true or false, had absolutely nothing to do with her transfer and nothing to do with Nguyen's employment at CLE or her termination, and c) given the great lengths that UT went to in an attempt to negatively color Nguyen's employment at CLE (especially when Esposito admitted that there were no such issues while at CLE)(R180) by reaching back to her time at the Dean's office, and particularly back to the beginning of her time at the Dean's office, it would appear that UT is engaging in the pretextual process of smearing Nguyen and attempting to cover the lack of credible and factually supported allegations of performance deficiencies in the record.

---

form the basis of Nguyen's transfer to CLE in late 2008, given the evidence that Nguyen cites supporting non-reputational reasons for the transfer.

**2)** The District Court's finding that Nguyen was hired to perform the thirteen special projects and failed to perform any of them is unsupported by the Record. Nguyen addressed this point above in Issue 3 establishing that the District Court had to disregard Nguyen's evidence of her testimony, documentation, testimony of a co-worker and an absence of evidence that the thirteen special projects actually formed any basis in her short term renewal or termination in order to make its ruling. What makes this weighing of evidence more troubling is the fact that no evidence was cited with which Nguyen could respond and/or this Court could review to make a determination on the District Court's finding. Pursuant to summary judgment standards, Nguyen has produced evidence raising a fact questions on the thirteen special projects as a legitimate basis for her termination. Therefore, it was reversible error for the Court to weigh evidence with regard to the thirteen special projects.

**3)** The District Court found that Nguyen failed to rebut evidence in support of the Same Actor inference, without explanation. Nguyen addressed this issue in detail, above in Issue 6. In this instance, to reach this ruling, the District Court had to disregard evidence that it had already included earlier in its opinion when it stated, "perhaps feeling unable to say 'no' to the Dean, he agreed to take Nguyen on, after Dean Sager offered to continue paying Nguyen's salary out of the Dean's office budget, so as to minimize the impact on CLE's budget." RE3:3-4. The

District Court's own opinion seems to take this case out of the purview of the Same Actor inference. This evidence, taken in conjunction with the other evidence Nguyen produced and argued in Issue 6, above, creates a fact question. The Record in this case cannot reasonably support a ruling that it is clear as a matter of law that Esposito's hiring of Nguyen at CLE was on completely racially neutral grounds.

**4)** The District Court found that Nguyen spends "the bulk of her response devoted to quibbling with whether these critiques—which are too numerous, and generally too petty, to enumerate in full here—were fair or accurate assessments of her work." The District Court mischaracterizes Nguyen's MSJ Response (and Appendix) as addressing whether her work was assessed as "fair or accurate" when Nguyen's presentation and argument directly address her evidence of racial disparity and pretext associated with the allegations against her. RE8:1-18. The District Court had to disregard Nguyen's evidence to come to this conclusion. Additionally, and perhaps more importantly, Nguyen agrees with the District Court that the allegations against her are too petty,[33] however, the District Court failed to draw the following reasonable inferences in favor Nguyen: a) these emails are too petty to justify her short-term renewal and termination, b) if these alleged performance issues were so important as to justify termination, there is no

explanation as to why there is no documentation of them being an issue prior to the issuance of the only short term renewal and termination of a fulltime employee beyond the probationary period (R203), and c) there is even less justification to terminate Nguyen when other employees were engaging in the same or similar conduct and not chastised, much less terminated for it. R239.

**5)** The District Court flatly criticized Nguyen's argument related to UT's disparate treatment of Nguyen compared with her co-worker, Koepp, and the pretextual nature of UT's attempt to cover up that disparity as "frivolous." RE3:9. However, the District Court does not address Nguyen's evidence or argument or otherwise explain its reasoning for its most harsh criticism. This provides evidence of racial disparity and pretext, as addressed in Issue 5 and Issue 6, above. Briefly, Koepp admitted to having engaged in the use of language Nguyen was criticized for in the templates ("Need Description" and "2-3 sentences")(R317-18), that the templates have been in place and used by the PCs for years (R123), that she had not been criticized for using that language until after Nguyen was terminated (R318), and that it made no sense to be criticized for language that is present in the templates which Esposito requires the PC's to use. *Id.* Additionally, the evidence shows that UT attempted to defend against Nguyen's assertion of disparate treatment on this issue by only partially citing to Koepp's deposition testimony that

---

[33] Nguyen disagrees that there were too many. In fact the lack of emails also calls into question

she had been criticized and leaving off the portion of her testimony (on the same page of her deposition) that she had not been criticized for it until after Nguyen had been terminated.  That would have been at least eight months later and just after Nguyen had filed her complaint of discrimination specifically alleging disparate treatment on this criticism.  Clearly, evidence of that kind of mendacity in attempting to "fix" the evidence of racial disparity by criticizing another employee months after the fact when the evidence establishes that all PCs had been using this language for years (R123) and no one was written up for it other than Nguyen, provides strong evidence of pretext for a jury to review.

## CONCLUSION

For the foregoing reasons, the District Court's order granting summary judgment should be reversed and this case remanded to the District Court for trial on the merits.

---

the basis for Nguyen's termination.

Respectfully submitted,

/s/ Robert Notzon
_____
Robert Notzon
Law Office of Robert S. Notzon
State Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 Facsimile
Robert@NotzonLaw.com
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of appellant's brief has been served on counsel for Appellees, by the Court's CM/ECF system and by email on April 8, 2013 as indicated below.

Dan Perkins, Asst. Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box12548, Capitol Station
Austin, Texas 78711-2548
dan.perkins@oag.state.tx.us            /s/ Robert Notzon
_____
                                       Robert Notzon

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP (32)(a)(7)(B). This brief contains 11,569 words according to the word-count function of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of FRAP (32)(a)(5) and the type style requirements of FRAP (32)(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word:Mac 2011 in Times New Roman 14-point font.

/s/ Robert Notzon
_____
Robert Notzon